### JIM BROZ V. THE STATE.

#### No. 6919.   Decided June 21, 1922.

#### Rehearing Denied December 20, 1922.

**1.—Manufacturing Liquor—Alibi—Charge of Court.**

Where, upon trial of the manfacture of liquor, the evidence was such as not to raise the issue of alibi, there was no reversible error in the refusal of the court to charge thereon.

**2.—Same—Personal Presence of Defendant—Alibi—Definition of Law.**

The statute governing the instant case forbids the direct or indirect manufacture of intoxicants, and it is not necessary for the proof to show the personal presence of the accused, as an indispensable element to his guilt; and to entitle him to a charge on alibi, he must show facts to the court which substantially support this theory.   Following Polanka v. State, 33 Texas Crim. Rep., 624, and other cases.

### 3.—Same—Principals—Charge of Court—Requested Charge.

Where, upon trial of the unlawful manufacture of intoxicating liquor, the court submitted the issue of principals applicable to the facts in the case, this obviated the need for any charge presenting the theory that some person other than appellant was the manufacturer.

### 4.—Same—Evidence—Declaration of Defendant.

Where, upon trial of the unlawful manufacture of intoxicating liquor, the defendant made certain statements to the officers who invited him into their automobile near the scene of where the liquor was found in defendant's home, and his declarations amounted to giving the officers facts which led to the discovery of the instruments and materials with which the illicit liquor was manufactured, the same was admissible in evidence.

### 5.—Same—Amendment of Statute—Repeal.

The amendment of the so-called Dean law as applicable to the manufacture of intoxicating liquor was not so changed by the amendment thereto in Chapter 61, Acts First Called Session, Thirty-Seventh Legislature, as to amount to repeal of the former law. Following Ex Parte Mitchum, 91 Texas Crim. Rep., 62.

### 6.—Same—Rehearing—Evidence—Rule Stated—Res Gestae.

The upholding of the ruling of the trial court in admitting the testimony relating to the conversation between the appellant and the officers who found the still in his house, is correct, and there is no reversible error. Following Roberts v. State, 83 Texas Crim. Rep., 139, and other cases, as the testimony was admissible under the statute which provides that if the confession leads to the finding of instruments, etc., the same is admissible. Following Willoughby v. State, 87 Texas Crim. Rep., 40. The conversation was also admissible as res gestae.

### 7.—Same—Principal—Accomplice—Charge of Court—Personal Presence.

There was no error not to call upon the jury to determine whether appellants, guilt was that of an accomplice and not a principal, as the facts showed that he was a principal, and under this offense it is not necessary that defendant was present at all times during the manufacture of liquor.

Appeal from the District Court of Milam. Tried below before the Honorable John Watson.

Appeal from a conviction of unlawful manufacture of intoxicating liquor; penalty, one year imprisonment in the penitentiary.

The opinion states the case.

*Robert M. Lyles,* for appellant.—On question of declarations of defendant: Parks 1. State, 79 S. W. Rep., 301.

*R. G. Storey,* Assistant Attorney General, for the State.

LATTIMORE, Judge.—Appellant was convicted in the District Court of Milam County of the offense of manufacturing liquor, and his punishment fixed at one year in the penitentiary.

Officers went to appellant's residence on October 31, 1921, and found a complete still in process of making liquor. There were three barrels of mash. A copper container with a capacity of twelve gal-

lons was on the stove boiling. The, worm leading from the top of this container was disconnected but still hot, and a five gallon keg of whisky was part of the find, also a quart of the same intoxicant. No one was at the house save the wife of appellant and two small children. The officers had a search warrant. When they got in about three hundred yards of appellant's house they saw him in the road. They slowed down and one of the parties spoke to appellant and said, "Get in Jim." The officers knew nothing of what they would find at his house. Appellant said, "Well you have got me." The conversation following, as detailed by the various officers, differed in some particulars. The officer seated next to appellant in the back seat of the car testified that when appellant said, "Weil you have got me," witness said, "Why, what are you doing Jim?" and that appellant replied, "Well I am a cooking." Another officer testified that he asked appellant, "What for?" when the latter said they had him, and that appellant replied to him, "What for, making whisky?" The party went to appellant's house and found therein the outfit, the operation, the product, above mentioned.

Various exceptions to the court's charge appear. One was for failure to charge on alibi, and a special charge embodying this phase of the law was presented and refused. There seems to us no need for such charge. Five gallons of the manufactured product were found at appellant's house. Barrels of mash that must have taken time to prepare, were also found. A complete manufacturing outfit was there also. The process of manufacture was proceeding. Appellant was within a few minutes walk of the scene of operation. It was his house. He was the head of the family. He said, "I am a cooking," "You have got me," "What for, making whisky?" The court submitted the law of the circumstantial evidence. The manufacture of intoxicating liquor is not begun or completed in a moment. That appellant was a short distance from his house when seen by the officers that morning, would not suffice to demand an acquittal upon the theory that he was at another and different place when the crime was committed. The fact that he may have been to drive a cow that morning, while the mash was fermenting, or the container cooking, or the worm collecting and dripping its contents, would not demand a charge on alibi. No question seems raised in the record that the factory was his and the manufacture his. Everything that was found bore out his statement to the officers and seem completely to establish his knowledge of and identity with the entire transaction. It hardly seems worth arguing that appellant would or could have said to the officers "I am a cooking," if he had no knowledge of what was going on and if some enemy had slipped into his house in his absence and started the operations upon the customary implements for carrying on the forbidden busines. The statute governing the instant case forbids the direct or indirect manufacture of intoxicants, and we would not think it necessary for the proof to show the personal presence of the

accused, as an indispensable element to his guilt. The law deals with substance, not with shadows, and in order to entitle him to demand a charge presenting an issue, he must show facts to the court which substantially support the theory that if his personal presence was not shown, he could not be guilty. Polanka v. State, 33 Texas Crim. Rep., 634; Parker v. State, 40 Texas Crim. Rep., 121; Underwood v. State, 55 Texas Crim. Rep., 604; Hernandez v. State, 64 Texas Crim. Rep., 73; Myers v. State, 65 Texas Crim. Rep., 448. The trial court submitted this case to the jury on the theory of principals, and we find in the charge the following:

"You are charged that if another did in fact commit the offense as alleged in the indictment and the defendant did not know the unlawful intent and did not aid by acts or encourage by words or gestures, he would not be a principal; and in the event you have a reasonable doubt thereof, you will acquit him."

And in another part of said charge is the following:

"But unless you do so believe from the evidence, beyond a reasonable doubt, that the defendant either alone or acting with some other person, did in the said State and County on or about the 31st day of October, 1921, either directly or indirectly unlawfully manufacture, intoxicating liquor as alleged in the indictment, and as is hereinbefore defined, and not for medicinal, mechanical, scientific or sacramental purposes, and not for any of said purposes, you will acquit the defendant and so say by your verdict."

This gave to the appellant the law the issues raised by the evidence as we view same, and obviated the need for any charge presenting the theory that some person other than appellant was the manufacturer, if any, in the instant case.

Complaint is made of the reception of the statements of appellant as made to the officers, it being urged that he was under arrest and unwarned. We do not think he was under arrest. The officers were going to his house. They had no warrant of arrest for him. They did not know what he had in his home. His statements were entirely voluntary and without inducement or threats. The reception of such evidence might be justified upon the further ground that same amounted to a statement made by him found later to be true and which conduced to establish guilt. As stated above, the officers were ignorant of his commision of crime. The fact of manufacture was unknown, likewise the place. Appellant not only said, "You have got me," and, "I am a cooking," but made the further statement that it was at his house. The cooking was at the house of appellant as was later ascertained and verified. We are not at all sure that the conversation would not also be admissible as res gestae. The cooking of the mash was evidently going on, and it was a part of the process of manufacture. The statements were made by appellant a short distance from the scene and while that much of the manufacture was in actual progress.

We think the testimony that the private road leading from the public road to the residence of appellant, showed much evidence of recent travel, was admissible for what it was worth as a circumstance supporting the claim of the State that illicit liquor was being manufactured and sold at appellant's house. This was true of the testimony of witness Sanders that automobiles and other vehicles frequently passed his house in the night-time going in the direction of appellant's home.

We are not impressed that the Dean law as applicable to the manufacture of intoxicating liquor was so changed by the amendment thereto contained in Chapter 61, Acts First Called Session, Thirty-seventh Legislature, p. 233, as to amount to a repeal of the former law and to thereby necessitate the reversal of the conviction of one who manufactured liquor prior to November 15, 1921, same being the date of the taking effect of said amendment. There was no change in the law forbidding the making of intoxicants save the taking out of the definition of the offense the exceptions formerly contained in that section of the statute defining the offense, and the incorporation of such exceptions in a separate section, and the removal of the purchaser of such liquor from the class of those who were made punishable by said Act. This matter was discussed by us in Ex parte Doc Mitchum, 91 Texas Crim. Rep., 62, 237 S. W. Rep., 936.

Finding no error in the record, the judgment of the trial court will be affirmed.

*Affirmed.*

### ON REHEARING

### December 20, 1922.

MORROW, PRESIDING JUDGE.—Appellant insists that in upholding the ruling of the trial court in admitting the testimony relating to the conversation between the appellant and the officers who found the still in his house, this court was in error.

The sheriff testified that he, in company with other officers, went to appellant's place of residence, and on the way, about three hundred yards from his home, they met and overtook him. The officers slacked up their conveyance, which was an automobile, and one of them said to the appellant: "Get in, Jim," and he got in the car. The sheriff had a warrant to search the premises of the appellant. Immediately after the appellant got into the car, he said: "You have got me." One of the officers inquired, "Where is it," and the appellant said, "In the house." The officer then said: "How much have you got," and appellant replied, "Not much." In connection with appellant's statement, "Well, you have got me," the officer testified: "I think I asked him what for—making whisky? He said, "I don't deny it." In the same connection with this testimony, one of the parties with the sheriff said to appel-

lant: "Which way are you going?," that on overtaking the appellant, he said: "Get in the car and ride with us a piece; we are going down your way." He came around and got in on the side and said: "Charlie, you come after me?" and the witness said, "Why?" Appellant said: "Well, you got me," and the witness said: "What are you doing, Jim?" He said: "Well, I am a cooking; you have got me." The sheriff and his companions accompanied the appellant in the car to his house, and they there found a still, a keg of whisky and a bottle of whisky, one barrel of mash in the dwelling and two in the smokehouse, a copper boiler containing a capacity of twelve gallons, and a copper worm. The boiler was full of mash and was sitting on the stove in the dwellinghouse. There was a fire burning in the stove. The vessel was very hot. The worm was lying on the floor right close to the stove, but not connected. The witness went into further detailed description of the still. No doubt, under the facts revealed by the record, at the time the declarations of the appellant in question were made, he was in custody within the meaning of Art. 810 of the Code of Crim. Proc. relating to confessions. Illustrative cases are Roberts v. State, 83 Texas Crim. Rep., 139; Clark v. State, 84 Texas Crim. Rep., 390; Willoughby v. State, 87 Texas Crim. Rep., 40; Campbell v. State, 89 Texas Crim. Rep., 243, 230 S. W. Rep., 695.

The question arises, was not the testimony admissible under the part of the statute mentioned, reading thus:

". . . unless in connection with said confession, he makes statements of facts or circumstances that are found to be true, . . . such as the finding of secreted or stolen property, or the instrument with which he states the offense was committed."

Many cases consruing this article are found. Among them are Davis v. State, 23 S. W. Rep., 687; Patterson v. State, 89 Texas Crim. Rep., 402, 231 S. W. Rep., 763; Torrence v. State, 85 Texas Crim. Rep., 310; Washington v. State, 86 Texas Crim. Rep., 327; Rippey v. State, 86 Texas Crim. Rep., 599; Singleton v. State, 87 Texas Crim. Rep., 302; Williams v. State, 89 Texas Crim. Rep., 334, 225 S. W. Rep., 177; Garcia v. State, 88 Texas Crim. Rep., 605, 228 S. W. Rep., 937; McGoldrick v. State, 89 Texas Crim. Rep., 585, 232 S. W. Rep., 851; Branch's Ann. Tex. Penal Code, Sec. 63, and cases therein collated. The record reveals no such previous knowledge of the location of the instruments with which the crime was committed as would render the declarations complained of inadmissible under the statutory rule which requires that the finding of the fruits of the crime or instruments used in its commission *shall be because* of the information gained from the accused through the confession. See Willoughby v. State, 87 Texas Crim. Rep., 40; Kennon v. State, 11 Texas Crim. App., 356; Nolen v. State, 14 Texas Crim. Rep., 485; Owens v. State, 16 Texas Crim. App., 460. Appellant accompanied the officers to his dwelling after making the statements mentioned, and in his presence the equipment for the manufacture of whisky was found while the

liquor was in the process of making. The officers, if their testimony is to be believed, did not previously know that the still was in the appellant's house and in operation, though they did entertain a suspicion of its presence there. It is believed that this was not such knowledge as would operate to exclude the testimony mentioned. It is by no means clear that the evidence complained of was not admissible under the rule of res gestae. Declarations of one accused of crime which come within this rule are admissible, either for or against him, even though at the time he be under arrest. Branch's Ann. Tex. Penal Code, Secs. 84, 85 and 86. At the time that the declarations were made, the accused, while not immediately within his dwelling-house, was in fact, at his home and was actually engaged in making the whisky. He was, in fact, cooking. Under these circumstances, the declaration that he was doing so would apparently, under the liberal interpretation of the res gestae rule which obtains in this State, be admissible. Wharton's Crim. Evidence, Sec. 262, note, p. 491.

There was no error, we think, in refusing to call upon the jury to determine whether appellant's guilt was that of an accomplice and not a principal. To make him a principal, it was not necessary, under the facts developed from the record, that he be present at all times during the manufacture of the liquor. The apparatus was not assembled in a moment; it was capable of manufacturing whisky; it was in his house, and the circumstances amply justified the finding that it was in his possession, albeit he may have possessed it in conjunction with others. Not only the equipment for making intoxicating liquors but a considerable quantity of intoxicating liquor itself was found upon the premises; also in the possession of the appellant, that is, in the house where he and his family lived, and his own declarations to the officers warrant the finding of the jury that he was cognizant of its presence. To connect him with guilt, it was not necessary that the evidence should show that on the particular day of his arrest, he was present when the fire was lighted or when the coil was connected. The nature of the crime was not one that demanded his continued presence during the manufacture of the liquor in order to make him a principal.

Upon this same reasoning, we think the request for the submission of the issue of alibi was properly refused.

The motion for rehearing is overruled.

*Overruled.*